**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| AUSTIN MILLER,<br>c/o Dalton J. Smith<br>3650 Allentown Road<br>Lima, Ohio 45807 | : Case No. _____<br><br>:<br><br>: |
| Plaintiff, | : Judge: _____ |
| | : |
| -vs- | : |
| | : |
| SHAWNEE TOWNSHIP, OHIO<br>2530 Ft. Amanda Road<br>Lima, Ohio 45804, | : COMPLAINT FOR<br>  DECLARATORY RELIEF,<br>: AND INJUNCTIVE<br>  RELIEF, DAMAGES, AND |
| and | : DEMAND FOR JURY<br>  TRIAL |
| PAUL NEFF, individually and<br>in his official capacity as a<br>Shawnee Township Trustee,<br>2530 Ft. Amanda Road<br>Lima, Ohio 45804, | :<br><br>:<br><br>: |
| and | : |
| KENNY GROSS, individually and<br>in his official capacity as a<br>Shawnee Township Trustee,<br>2530 Ft. Amanda Road<br>Lima, Ohio 45804, | :<br><br>:<br><br>: |
| and | : |
| JOE RECKER, individually and<br>in his official capacity as a<br>Shawnee Township Trustee,<br>2530 Ft. Amanda Road<br>Lima, Ohio 45804, | :<br><br>:<br><br>: |

1

**SMITH, WARNECKE, MEREDITH & CLARK**

Defendants                                              :

Now comes Plaintiff Austin Miller ("Plaintiff" or "Chief Miller"), by and through undersigned counsel, for his Complaint against Defendants Shawnee Township, Ohio, Paul Neff, Kenny Gross, and Joe Recker (collectively, "Defendants"), states and avers as follows:

### INTRODUCTION

1. Austin Miller has served as Fire Chief of Shawnee Township for two years. In that time, Shawnee Township has twice placed him on administrative leave and twice made his suspension a public spectacle. His current leave is Shawnee Township's own distinctive version of the practice: he is barred from his own workplace and placed under what amounts to de facto house arrest during business hours, told to remain available to the Trustees "in case contact... is necessary," yet in more than eleven weeks Defendants have never once contacted him, even as the Township has publicly acknowledged its own Fire Department is short-staffed and relying on overtime to cover his absence. He has been warned, in writing, that so much as contacting a Township employee or discussing his own leave (or innocence) with the public will cost him his job.

2. The first time Defendants suspended him, he went without any charge for approximately seven months. As reported by the Lima News, the investigation report recommending Plaintiff's termination was started on November 6, 2025, one day after two of the sitting trustees lost their re-election bids, and Plaintiff's hearing was held on December 15, 2025, by that same outgoing board, in the final weeks before its members left office. Shawnee Township fire chief back on paid leave, temporarily, Lima News (Dec. 23, 2025), available at https://www.limaohio.com/top-stories/2025/12/23/shawnee-township-fire-chief-back-on-paid-leave-temporarily/. Every charge

2

**SMITH, WARNECKE, MEREDITH & CLARK**

against Plaintiff was dismissed with prejudice at that hearing. The second time, he has been given neither charges nor a hearing at all. He has been publicly accused of conduct Shawnee Township has never charged him with, never proven, and never allowed him to answer.

3. On May 11, 2026, without any warning to Plaintiff that his employment was even under consideration, Defendants voted to suspend him and told the public he was under investigation for "potential criminal allegations," a characterization Defendants have never explained, charged, or proven. Plaintiff received no call, no notice, and no chance to respond before the vote; he learned of his own suspension the same way the rest of Shawnee Township did. The Township accused him publicly and silenced him privately, leaving him no way to tell his own community that the man they have called their fire chief for two years is not the criminal his suspension implies.

4. A person accused of wrongdoing is entitled to answer that accusation. Defendants have taken that from Plaintiff by administrative fiat, then compounded it by refusing him a hearing, refusing him charges, and refusing to return the authority of the office he holds while they decide, on no fixed timetable, what if anything they intend to do with him.

5. This action does not ask the Court to decide whether Chief Miller is guilty of anything. Defendants have never said what he is accused of with enough specificity for anyone to judge that, including him. It asks the Court to hold that a public employer may not accuse a man publicly and gag him privately, and may not strip him of his office and his voice at the same time, without ever giving him the process the Constitution requires.

6. Plaintiff brings this action to vindicate his rights under the First and Fourteenth Amendments to the United States Constitution, and seeks declaratory relief, injunctive relief, compensatory and punitive damages, and attorneys' fees and costs.

3

**SMITH, WARNECKE, MEREDITH & CLARK**

## I. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), as this action arises under the Constitution and laws of the United States and under 42 U.S.C. § 1983.

8. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201–2202, and injunctive relief under Fed. R. Civ. P. 65.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to this action occurred in Allen County, Ohio, which lies within the Western Division of the Northern District of Ohio.

## II. PARTIES

10. Plaintiff Austin Miller is a natural person and a resident of Van Wert Township, Van Wert County, Ohio. At all times relevant to this Complaint, Plaintiff has held the position of Fire Chief of the Shawnee Township Fire Department.

11. Defendant Shawnee Township, Ohio ("the Township") is a political subdivision of the State of Ohio and is a "person" subject to suit under 42 U.S.C. § 1983. The Township is governed by its Board of Trustees, which constitutes the Township's final policymaking authority with respect to the employment, suspension, and discipline of the Township's Fire Chief.

12. Defendant Paul Neff is, and at all relevant times was, a Trustee of Shawnee Township and Chairman of its Board of Trustees. He is sued in his individual capacity and in his official capacity as a Township Trustee.

13. Defendant Kenny Gross is, and at all relevant times was, a Trustee of Shawnee Township. He is sued in his individual capacity and in his official capacity as a Township Trustee.

14. Defendant Joe Recker is, and at all relevant times was, a Trustee of Shawnee Township. He is sued in his individual capacity and in his official capacity as a Township Trustee.

15. At all times relevant to this Complaint, each individual Defendant acted under color of state law within the meaning of 42 U.S.C. § 1983.

4

**SMITH, WARNECKE, MEREDITH & CLARK**

### III.  FACTUAL ALLEGATIONS

#### A.  Plaintiff's Prior (2025) Suspension and Reinstatement

16. In 2025, Defendants placed Plaintiff on administrative leave from the position he had held with distinction. He remained on leave for approximately seven months before Defendants presented him with any formal statement of charges, seven months in which the Township offered him no explanation and the community he served was left to guess at one.

17. Formal charges against Plaintiff were not presented until shortly before his removal hearing, and for a portion of that seven-month period, Defendants suspended him without pay as well as without cause disclosed.

18. Plaintiff's removal hearing was held on December 15, 2025, and lasted approximately eight hours. Defendants required him to defend his career, in that hearing, in an unheated garage, in sub-freezing temperatures. A man who had spent his career walking into burning buildings for this Township was made to sit in the cold to keep his job.

19. At the conclusion of that hearing, every charge against Plaintiff was dismissed with prejudice.

20. R.C. 505.38 required that, before Defendants could lawfully initiate removal proceedings against Plaintiff in 2025, the Board designate, at a public meeting, either Plaintiff or a private citizen to investigate the conduct at issue and prepare the charges against him.

21. The investigation underlying Plaintiff's 2025 charges was conducted by an individual retained by the Township, who testified at Plaintiff's December 15, 2025 hearing. Based on a review of the Township's public meeting minutes for the relevant period, Defendants never took a vote, at any public meeting, designating that investigator, or any other individual, to investigate Plaintiff's conduct or prepare the charges ultimately brought against him. Despite extensive public-records requests, and despite a request made on the record at the December 15, 2025 hearing itself,

5

**SMITH, WARNECKE, MEREDITH & CLARK**

Defendants have never produced any meeting minutes or resolution designating or appointing an investigator for that proceeding.

22. Defendants' 2025 removal proceeding against Plaintiff was commenced, prosecuted, and carried through an eight-hour hearing without the Board ever having satisfied R.C. 505.38's threshold requirement for lawfully initiating that proceeding in the first place. As set forth more fully below, Defendants would fail to satisfy that same statutory requirement again in 2026, the same shortcut, taken twice, against the same man.

23. On January 12, 2026, the Shawnee Township Board of Trustees passed Resolution 23-26, accepting an addendum to its agreement with Plaintiff, and Resolution 24-26, reinstating Plaintiff to the position of Fire Chief effective January 13, 2026.

24. During the pendency of the 2025 proceedings against Plaintiff, Battalion Chief Mike Hasenstaub served as interim Fire Chief, the same Battalion Chief Defendants would install once more, in the same role, the second time they did this to Plaintiff.

**B.    The October 2025 BCI Referral and Non-Prioritization**

25. On October 17, 2025, while Plaintiff's 2025 suspension was still pending, Shawnee Township Police Chief Robert A. Kohli submitted a written request to the Ohio Bureau of Criminal Investigation ("BCI"), a division of the Office of the Ohio Attorney General, requesting BCI's assistance investigating an allegation described internally as "Theft in Office."

26. On October 24, 2025, BCI declined to become involved in the matter. A true and accurate copy of that response is attached hereto as Exhibit D.

27. Despite that declination, despite extensive public-records requests directed to Defendants, and despite Defendants' own prior knowledge of the referral, this information was never utilized as part of Plaintiff's 2025 removal proceeding, was never disclosed to the public, and, more significantly, was never disclosed to Plaintiff himself. Plaintiff was never told that Township

6

**SMITH, WARNECKE, MEREDITH & CLARK**

employees, former Township trustees, or the Township's Police Chief had attempted to have him criminally prosecuted for an incident said to have occurred within the Fire Department while Plaintiff was away from the Fire Department on the seven-month suspension the same Township had itself imposed.

28. On information and belief, that same 2025 referral, or the underlying allegation it concerned, forms part of the basis for the "potential criminal allegations" publicly attributed to Plaintiff in connection with his May 11, 2026 suspension, described further below. A matter the State's own investigators would not prioritize in 2025 became, without any new evidence disclosed to Plaintiff, part of the public justification for suspending him a second time.

## C. The May 11, 2026 Suspension and Public Statement

29. On May 11, 2026, without any prior notice to Plaintiff that his employment status was under consideration and without any opportunity to be heard, the Shawnee Township Board of Trustees voted, by Resolution 84-26, to place Plaintiff on paid administrative leave, effective immediately. Plaintiff learned his career was under scrutiny the same moment the rest of Shawnee Township did.

30. The vote occurred in the immediate aftermath of an executive session, with no public discussion preceding the roll-call vote, a decision announced as though it had never been made anywhere but in that room, moments before.

31. Immediately following the vote, Trustee Neff read a prepared public statement announcing that the Fire Chief had been placed on paid administrative leave pending the outcome of two separate ongoing investigations. A statement prepared in advance of a vote that was, by law, not supposed to be decided in advance.

32. That statement disclosed that one investigation, being conducted by the Ohio Auditor of State Special Investigations Unit, concerned "alleged criminal and ethical violations," and expressly

7

**SMITH, WARNECKE, MEREDITH & CLARK**

clarified that this investigation was a state-level matter and was not being conducted by the Shawnee Township Police Department or local administration.

33. The statement further disclosed that the Township had "been made aware of other potential criminal allegations and policy violations" against Plaintiff, and that the Trustees were "actively working towards an investigation into these matters," representing to the public that any investigation into those allegations had not yet begun as of May 11, 2026. As set forth more fully below, that representation was inaccurate: Defendants had already retained outside human resources counsel to investigate Plaintiff, and to build a case toward his discipline or removal, as early as February 2026, three months before Defendants represented to the public that no such investigation had yet begun.

34. The statement was disseminated publicly and was reported in local media, ensuring that every resident of Shawnee Township would hear the word "criminal" attached to their fire chief's name before he ever heard a single specific allegation against him.

### D. The May 11, 2026 Leave Letter

35. That same day, Defendants hand-delivered to Plaintiff a written letter titled "Administrative Leave with Pay," bearing the names of Defendants Neff, Gross, and Recker. A true and accurate copy of that letter is attached hereto as Exhibit B. Whatever else it accomplished, it made clear that Plaintiff would not be permitted to speak for himself.

36. The letter stated that Plaintiff was being placed on leave because "an administrative investigation is being conducted into allegations of serious workplace misconduct," a characterization materially different from, and considerably narrower than, the "potential criminal allegations" characterization publicly announced by Trustee Neff that same day. The Township told its own employee one thing and told the public another.

8
**SMITH, WARNECKE, MEREDITH & CLARK**

37. The letter directed Plaintiff, among other things, that during his administrative leave he was "not to discuss [his] leave, any issue relative to [his] placement on administrative leave, or any work-related issues with any employee of Shawnee Township or the public unless otherwise specifically instructed by the Trustees or [their] designee," and that he was "not to attempt to contact any employee or member of the public to inquire about any circumstance related to [his] placement on administrative leave or the ongoing investigation into [his] alleged behavior."

38. The letter further directed that Plaintiff was "not to represent [himself] as a representative of Shawnee Township or the Shawnee Township Fire Department in public," and that questions regarding his leave "are not to be asked of any employee of Shawnee Township." Defendants did not merely decline to answer for Plaintiff. They forbade anyone from asking.

39. The letter warned Plaintiff, in explicit terms, that he was "required to comply with this investigation and any and all directives contained in this letter or otherwise," and that "if you fail to comply, you will be terminated from employment." Plaintiff's livelihood, and his silence, were made one and the same condition.

40. The letter thus conditioned Plaintiff's continued employment, a property interest protected by the Fourteenth Amendment, on his silence regarding a matter of substantial public concern: the suspension of a public safety official amid publicly announced allegations of potential criminal conduct.

41. The letter further confined Plaintiff to his residence during his normal working hours, stating that "your assignment is your residence, and you are to remain available to the Trustees or their designee during your normal working hours in case contact with you is necessary," and that, should Plaintiff "need to address any personal issues during [his] normally scheduled work hours," he was required to "request, and be approved, applicable paid leave" before doing so.

9
**SMITH, WARNECKE, MEREDITH & CLARK**

The letter also barred Plaintiff from entering any Township grounds or facility "unless [he had] routine personal business to conduct such as any member of the public may have."

42.  Despite representing that Plaintiff's continuous availability was necessary "in case contact with [him] is necessary," Defendants have never once contacted Plaintiff for any Township purpose in the more than eleven weeks he has remained subject to this de facto house arrest during business hours. The only contact between Plaintiff and Defendants during that entire period occurred when Plaintiff himself called to request approval to use paid leave so that he could leave his home. The restriction Defendants imposed on Plaintiff was never once used for the purpose Defendants gave for imposing it. Indeed, as described more fully below, Defendants spent part of that same period arranging for another individual to assume Plaintiff's duties rather than ever availing themselves of the access to Plaintiff they claimed to require.

43.  The letter did not identify any anticipated end date for Plaintiff's leave, any process by which Plaintiff might contest his placement on leave, or any procedure by which Plaintiff might respond to or clear his name of the allegations publicly attributed to him. It told him only that he was accused, that he must be silent, and that he must wait.

44.  On information and belief, the restrictions described above were adopted for the explicit purpose of making Plaintiff's continued tenure as Fire Chief so intolerable that he would voluntarily resign, allowing Defendants to accomplish through attrition what they have not lawfully accomplished through any charge, hearing, or removal proceeding. See generally *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) (constructive discharge occurs where working conditions become so intolerable that a reasonable person in the employee's position would feel compelled to resign).

10
**SMITH, WARNECKE, MEREDITH & CLARK**

E.    **Plaintiff's Request for a Name-Clearing Hearing**

45.    On May 26, 2026, undersigned counsel, on Plaintiff's behalf, asked Defendants for the one thing they had denied him: a chance to answer. That written correspondence, sent to the Shawnee Township Board of Trustees and its legal counsel, is attached hereto as Exhibit A.

46.    That correspondence expressly requested clarification of, among other things, "[w]hether any allegation or insinuation of criminal misconduct forms any basis for the Township's actions," and expressly requested "an opportunity for Chief Miller to respond through an appropriate name-clearing process," in light of the Township's public reference to "potential criminal allegations" against him.

47.    As of the filing of this Complaint, Defendants have never responded, in whole or in part, to that correspondence. No name-clearing hearing, process, or opportunity of any kind has ever been offered or afforded to Plaintiff. He asked to be heard. Defendants said nothing at all.

48.    Defendants' only response to Plaintiff's counsel's efforts to obtain information regarding the basis for Plaintiff's suspension came in the form of an in-person meeting on June 18, 2026, at which counsel for the Board of Trustees provided no documentation of any kind and characterized the meeting itself as "worthless," suggesting that Plaintiff's counsel should sue the Township if he wanted any documents or information. A man's career was treated as too small a matter to warrant an answer.

49.    During that same June 18, 2026 meeting, which undersigned counsel recorded, counsel for the Board of Trustees stated that Defendants had not, in fact, accused Plaintiff of any crime. That statement directly contradicts Defendants' own May 11, 2026 public statement, described above, characterizing the matters against Plaintiff as "potential criminal allegations."

50.    Also during that same June 18, 2026 meeting, after undersigned counsel noted that Plaintiff had already been suspended longer than R.C. 733.37 permits without any charge, counsel for the

11
**SMITH, WARNECKE, MEREDITH & CLARK**

Board of Trustees responded that Defendants might simply terminate Plaintiff without a hearing, and that Plaintiff could then file suit. Defendants' own counsel thereby acknowledged, in substance, that Defendants were prepared to act unlawfully and to treat litigation, rather than compliance with the law, as an acceptable cost of doing so.

51. During that same June 18, 2026 meeting, which undersigned counsel recorded, counsel for the Board of Trustees identified, as one of the concerns informing Defendants' actions against Plaintiff, that Plaintiff had attempted to recommend the hiring of a firefighter candidate who was a non-United States national. No explanation was offered as to how that recommendation violated any Township policy, certification requirement, or legal obligation, and no similar concern was ever raised as to any other candidate Plaintiff recommended for hire.

52. An invoice issued to the Township by Clemans Nelson & Associates, Inc., the Township's outside human resources consultant, for the billing period of June 1 through June 30, 2026, reflects that on that same date, June 18, 2026, the consultant billed for, among other things, work described as "reviewed and revised charges" and "reviewed labor agreement regarding hiring of candidates." A true and accurate copy of that invoice is attached hereto as Exhibit E.

53. On information and belief, based on the timing and content of the billing entries described in the preceding paragraph and the entries surrounding them, the "charges" referenced in that invoice concern Plaintiff. Those entries reflect that, as of June 18, 2026, written charges concerning Plaintiff existed in at least draft form and were under active revision by the Township's outside consultant, notwithstanding that Defendants had publicly represented, more than a month earlier, that any investigation into the "other potential criminal allegations" against Plaintiff had not yet begun. Plaintiff has never been interviewed, contacted, or otherwise consulted by Defendants or their consultant in connection with those charges at any point before, on, or after that date. No

**SMITH, WARNECKE, MEREDITH & CLARK**

such charges have ever been served on Plaintiff, and no hearing concerning any such charges has ever been noticed or held.

54. Official Township meeting minutes document that, during this same period, the Fire Department was short-staffed and actively seeking to hire additional firefighters. The Shawnee Township Board of Trustees regular meeting minutes for January 26, 2026, for example, record the Fire Department's report to the Board as "looking to hire and get back to full staffing." Independently prepared notes of the Board's June 22, 2026 meeting, published by a member of the public who attended, likewise record the Fire Department's report to the Board that it remained "short one person on A shift and C shift." The Township that needed firefighters punished the man who tried to hire one.

55. Those same independently prepared notes of the Board's June 22, 2026 meeting record that, during the Law Director's report, Fiscal Officer Kevin Cooley stated he had not received any formal public-records requests, and that the Township's counsel, Clay Balyeat, expressed surprise at that statement and confirmed on the record that the Township had, in fact, received such requests.

### F. The July 20, 2026 Appointment of an Acting Fire Chief

56. On or about July 20, 2026, more than seventy days after Plaintiff was placed on leave, and without any charge having been filed against him, any hearing having been held, or any name-clearing process having been afforded, Defendants caused the appointment of Battalion Chief Mike Hasenstaub as Acting Fire Chief of the Shawnee Township Fire Department, vesting him with all of the duties and responsibilities of the office of Fire Chief. In short, Defendants made good on the very thing their own counsel had described weeks earlier: they replaced Plaintiff in substance without ever having presented him with a single charge.

13

**SMITH, WARNECKE, MEREDITH & CLARK**

57. As reported by the Lima News, Defendants' own press release, issued through the Board of Trustees, stated: "Due to Chief Miller's prolonged absence and investigation, it is necessary to appoint an acting chief to ensure the department's daily functions continue." Hasenstaub to serve as acting Shawnee fire chief, Lima News (July 20, 2026), available at https://www.limaohio.com/top-stories/2026/07/20/mike-hasenstaub-to-serve-as-acting-fire-chief/. Defendants call it a "prolonged absence." It is a prolonged absence of their own making.

58. On information and belief, Defendants' designation of Hasenstaub as Acting Fire Chief, considered together with Defendants' sustained refusal to charge, hear, or restore Plaintiff, their engagement of outside human resources counsel to review matters concerning Plaintiff's position over a period of weeks, and their failure to identify any anticipated end date for Plaintiff's exclusion from office, reflects an intention by Defendants to replace Plaintiff on a permanent rather than temporary basis, notwithstanding the "Acting" title publicly assigned to Hasenstaub's appointment. Plaintiff does not know, and cannot know with certainty, Defendants' actual intentions in this regard, because Defendants have withheld the very public records, including those specifically sought in Plaintiff's pending public-records request, that would answer that question.

59. On information and belief, the Shawnee Township labor agreement governing the hiring of firefighters contains no requirement of United States citizenship or particular immigration status, and Ohio law imposes no such requirement on firefighter certification generally. Defendants' resort to that labor agreement, on the same date on which Plaintiff's recommendation of a non-United States national was raised as a concern informing Defendants' actions against him, is consistent with an effort to locate a facially legitimate basis for a concern that was, in substance, about the candidate's national origin.

14

**SMITH, WARNECKE, MEREDITH & CLARK**

60. As of the filing of this Complaint, Plaintiff remains on paid administrative leave, subject to the restrictions described above, stripped of all authority and responsibility associated with his office, uncharged, and without any hearing, name-clearing process, or other opportunity to be heard ever having been afforded to him.

## G. Pattern and Practice

61. The conduct described above closely mirrors Defendants' conduct during Plaintiff's 2025 suspension, in which Plaintiff was likewise removed from duty, Battalion Chief Hasenstaub was likewise appointed interim Fire Chief, and the Township likewise declined to publicly disclose the basis for its action or the outcome of its investigation absent outside pressure. This is not a single lapse. It is how this Township treats this man.

62. As set forth above and below, Defendants' failure to comply with R.C. 505.38's investigator-designation requirement is not an isolated lapse: Defendants failed to satisfy that same statutory requirement in both the 2025 proceeding against Plaintiff and the proceeding, if any, purportedly underway against him in 2026. That repetition, on the same statutory requirement, against the same employee, evidences a practice rather than an oversight.

63. On information and belief, Defendants' engagement of outside human resources counsel concerning Plaintiff was not limited to June 2026. Invoices issued to the Township by Clemans Nelson & Associates, Inc. reflect billed consultation time in February 2026, within approximately one month of Plaintiff's January 13, 2026 reinstatement, for work described as "reviewed employee issue" and "on-site meeting to review potential employee discipline issue," as well as billed time in June 2026 for work described as "reviewed and revised charges." Counsel for the Board of Trustees confirmed, during the June 18, 2026 meeting described above, that a matter concerning Plaintiff had been "brought to light" in February 2026. Those entries concern Plaintiff, and reflect that Defendants were engaged in sustained efforts toward Plaintiff's

15
### SMITH, WARNECKE, MEREDITH & CLARK

discipline for months before any public charge, hearing, or explanation was ever given to him. None of these consultations occurred on a date on which the Board of Trustees held any public meeting.

64. Defendants' course of conduct is not fairly described as an investigation. It was a secret, unannounced campaign, conducted entirely outside of any public session, to build a case against a man who had no idea he was being targeted, carried out in precisely that manner so as to avoid public scrutiny and to deny Plaintiff any opportunity to respond before Defendants had already decided what to do with him.

65. On information and belief, Defendants' practice of suspending Plaintiff without notice or hearing, restricting his speech regarding his own employment status under threat of termination, and declining to afford him any name-clearing process, reflects the official policy, practice, and custom of the Shawnee Township Board of Trustees, which constitutes the final policymaking authority of Defendant Shawnee Township with respect to the employment and discipline of its Fire Chief.

## H. Defendants' Noncompliance with R.C. 505.38

66. R.C. 505.38 governs the appointment and removal of a township fire chief. To initiate removal proceedings against a fire chief, R.C. 505.38 requires that the board of township trustees "designate the fire chief or a private citizen to investigate the conduct and prepare the necessary charges" in conformity with R.C. 733.35 through 733.39.

67. That designation is a statutory prerequisite to the lawful initiation of any removal proceeding against a township fire chief. See Stanton v. Jerusalem Twp. Bd. of Trustees, 2015-Ohio-463 (6th Dist.) (recognizing R.C. 505.38's requirement that a board designate the fire chief or a private citizen to investigate conduct and prepare charges before a fire chief may be removed).

16
**SMITH, WARNECKE, MEREDITH & CLARK**

68. As of the filing of this Complaint, Defendants have never taken a vote, at any public meeting, designating Plaintiff or any private citizen to investigate the "other potential criminal allegations and policy violations" referenced in Trustee Neff's May 11, 2026 public statement, or to prepare any charges against Plaintiff arising from that investigation.

69. As reported by the Lima News on July 20, 2026, the investigation into those "other potential criminal allegations," as distinct from the separate investigation being conducted by the Ohio Auditor of State's Special Investigations Unit, is being led by "an unknown party," and the identity of that investigator has never been publicly disclosed by Defendants. Hasenstaub to serve as acting Shawnee fire chief, Lima News (July 20, 2026), available at https://www.limaohio.com/top-stories/2026/07/20/mike-hasenstaub-to-serve-as-acting-fire-chief/.

70. Defendants' failure to designate an investigator in conformity with R.C. 505.38 means that Defendants have never lawfully initiated any removal proceeding against Plaintiff, and that Plaintiff has been suspended and stripped of the duties of his office without even the minimal process that Ohio law requires before such a proceeding may lawfully commence, let alone the process due under the Fourteenth Amendment.

## I.    Defendants' Deviations from Their Own Personnel Policy

71. The Shawnee Township Trustees Personnel Policy and Procedure Manual, Section 8 ("Section 8"), governs employee discipline, appeals, and grievances for Township employees, including the Fire Chief. A true and accurate copy of Section 8 is attached hereto as Exhibit C.

72. Section 8.01.1 states that, while most non-bargaining unit employees of the Township serve at the will of the Township Trustees, the Board has nonetheless established binding principles for administering discipline, including that "[i]mmediate attention shall be given to any infractions" and that "[d]eviations from this procedure should be justified and documented." That at-will

17

SMITH, WARNECKE, MEREDITH & CLARK

framing, in any event, does not govern Plaintiff's position: as Fire Chief, Plaintiff is a statutory office-holder subject to removal only as provided by R.C. 505.38 and R.C. 733.35 through 733.39, not an at-will employee.

73. Section 8.03.1.b permits a supervisor to place a member on administrative suspension only "if the continuing conduct of the member would jeopardize the safety of others and/or seriously compromise the operations of the agency," and requires that "[t]he infraction and reason for the immediate suspension shall be documented in writing by the supervisor."

74. The May 11, 2026 leave letter does not identify any safety or operational concern justifying Plaintiff's suspension, and Defendants have never produced any writing documenting the infraction or reason for Plaintiff's immediate suspension, despite a specific request for such documentation in Plaintiff's June 27, 2026 public-records request.

75. Section 8.04.6 further provides that the Board "may place an employee on administrative leave with pay, but only in circumstances where the health or safety of the employee, other employees, or of any person or property entrusted to the employee's care could otherwise be adversely affected," and that the length of such leave "normally would extend until the Board investigates the alleged infraction, completes the pre-disciplinary process, and administers disciplinary action or decides not to do so."

76. Section 8.04.1 through 8.04.4 require that, whenever the Township determines an employee may have committed an offense that could result in suspension, reduction, or termination, a pre-disciplinary conference be scheduled, with written notice provided to the employee at least twenty-four hours in advance, affording the employee an opportunity to respond before any such action is taken. Section 8.03.C.4 expressly invokes *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), and *Garrity v. New Jersey*, 385 U.S. 493 (1967), as the source of this requirement.

**SMITH, WARNECKE, MEREDITH & CLARK**

77. Defendants have never scheduled a pre-disciplinary conference for Plaintiff, have never provided him written notice of any such conference, and have never afforded him any opportunity to respond to the allegations against him, in violation of Defendants' own written policy.

78. Defendants' wholesale departure from the minimal procedural protections set forth in their own governing personnel policy, protections that, by the policy's own terms, are meant to satisfy the requirements of *Loudermill* and *Garrity*, further evidences the arbitrary and unexplained character of Plaintiff's ongoing suspension and exclusion from office.

## IV. CLAIMS FOR RELIEF
## COUNT I
## 42 U.S.C. § 1983: Violation of the First Amendment
## (Prior Restraint on Speech / Unconstitutional Conditions)
## (Against All Defendants)

79. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully rewritten herein.

80. The First Amendment, applicable to Defendants through the Fourteenth Amendment, prohibits government actors from restraining speech in advance of its utterance and prohibits conditioning a public benefit, including public employment, on the surrender of a constitutional right.

81. Plaintiff's speech regarding his own suspension, the basis for it, and the conduct of Defendants in suspending him without process addresses a matter of unmistakable public concern: the employment status and fitness for office of a public safety official responsible for the protection of the Shawnee Township community, and the manner in which a public body has exercised its authority over that official. See, e.g., *Blick v. Ann Arbor Pub. Sch. Dist.*, 674 F. Supp. 3d 400 (E.D. Mich. 2023) (public employee's speech regarding her own suspension pending investigation into alleged misconduct addressed a matter of public concern).

82. That speech was not made, and would not have been made, pursuant to Plaintiff's official duties, and is therefore speech of a private citizen entitled to full First Amendment protection under

**SMITH, WARNECKE, MEREDITH & CLARK**

*Pickering v. Board of Education*, 391 U.S. 563 (1968), and its progeny, including *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

83. The May 11, 2026 leave letter imposes a sweeping, indefinite, content-based prior restraint on Plaintiff's speech regarding a matter of public concern, prohibiting him from discussing his own leave or the circumstances surrounding it with any Township employee or member of the public, under threat of termination from employment. Such prior restraints on public-employee speech are subject to exacting scrutiny. See United *United States v. National Treasury Employees Union*, 513 U.S. 454 (1995).

84. Defendants' interest in the orderly administration of any pending investigation does not justify a categorical, indefinite prohibition on all of Plaintiff's speech concerning his own employment status, particularly where Defendants have identified no evidence that Plaintiff's speech would compromise any legitimate governmental interest, and where less restrictive alternatives were available.

85. By conditioning Plaintiff's continued employment on his complete silence regarding a matter of public concern, Defendants have imposed an unconstitutional condition on a government benefit in violation of the First Amendment.

86. Defendants' conduct, undertaken under color of state law, has deprived Plaintiff of rights secured by the First and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

87. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, including lost professional opportunity, damage to his professional reputation, emotional distress, and the ongoing chilling of his exercise of constitutionally protected speech.

**SMITH, WARNECKE, MEREDITH & CLARK**

**COUNT II**
**42 U.S.C. § 1983: Violation of the Fourteenth Amendment**
**(Deprivation of Liberty Interest Without Due Process:**
**Denial of Name-Clearing Hearing)**
**(Against All Defendants)**

88. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully rewritten herein.

89. The Fourteenth Amendment protects a public employee's liberty interest in his good name, reputation, honor, and integrity, and entitles an employee who has been stigmatized by the public dissemination of false information, made in conjunction with an adverse employment action, to a name-clearing hearing upon request. *Quinn v. Shirey*, 293 F.3d 315, 319–20 (6th Cir. 2002).

90. Defendants publicly stated, through Trustee Neff's May 11, 2026 statement, that Plaintiff had been placed on leave in connection with "potential criminal allegations and policy violations," a characterization disseminated to the public and reported in local media.

91. That public characterization goes well beyond an allegation of mere improper performance, incompetence, or malfeasance, and instead charges Plaintiff, in substance, with potential criminal conduct.

92. That characterization is inconsistent with, and considerably more severe than, Defendants' own internal, contemporaneous characterization of the same matter as concerning "allegations of serious workplace misconduct," as stated in the May 11, 2026 leave letter, an inconsistency that itself calls into question the accuracy of the public characterization, which Plaintiff denies. Defendants' own counsel confirmed as much directly: during the June 18, 2026 meeting described above, counsel for the Board of Trustees stated that Defendants had not, in fact, accused Plaintiff of any crime. That inconsistency is compounded by the shifting and, at times, facially improper justifications Defendants' own counsel has offered for Plaintiff's continued exclusion from office, including the hiring-recommendation comment described above.

21
**SMITH, WARNECKE, MEREDITH & CLARK**

93. Defendants' dissemination of the "potential criminal allegations" characterization was voluntary and was made in conjunction with Plaintiff's removal from his duties as Fire Chief, an adverse employment action that has now extended for more than seventy days and that was made effectively indefinite by the July 20, 2026 appointment of an Acting Fire Chief vested with all of Plaintiff's authority.

94. On May 26, 2026, Plaintiff, through counsel, expressly requested an opportunity to respond to the allegations against him through "an appropriate name-clearing process."

95. Defendants have never responded to that request in any respect and have never afforded Plaintiff any name-clearing hearing or process of any kind. Defendants' sustained and total non-response to Plaintiff's unambiguous, written request constitutes a denial of that request.

96. Defendants' denial of Plaintiff's request for a name-clearing hearing, despite having publicly stigmatized him in connection with the deprivation of his employment duties, deprived Plaintiff of a liberty interest protected by the Fourteenth Amendment without due process of law, in violation of 42 U.S.C. § 1983.

97. Defendants' failure to comply with even the minimal procedural prerequisites of R.C. 505.38, including their failure to designate any investigator to investigate the allegations against Plaintiff or to prepare charges, further evidences the arbitrary and unlawful character of Defendants' continued deprivation of Plaintiff's liberty interest without any process whatsoever.

98. Defendants' conduct likewise departed from their own written personnel policy, which requires a pre-disciplinary conference with written notice before any suspension and limits administrative suspension to circumstances involving a documented safety or operational concern, neither of which Defendants have ever satisfied. That failure is compounded by the fact that written charges concerning Plaintiff existed, in at least draft form, as early as June 18, 2026, yet were never served on Plaintiff and have never been the subject of any notice or hearing.

**SMITH, WARNECKE, MEREDITH & CLARK**

99. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, including damage to his professional reputation, loss of professional standing, emotional distress, and other consequential harm.

**COUNT III**
**42 U.S.C. § 1983: Violation of the Fourteenth Amendment**
**(Deprivation of Property Interest Without Due Process)**
**(Against All Defendants)**

100. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully rewritten herein.

101. A property interest protected by the Fourteenth Amendment arises where state law creates a legitimate claim of entitlement to continued employment, rather than a mere unilateral expectation of it. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Perry v. Sindermann*, 408 U.S. 593 (1972). R.C. 505.38 creates precisely such an entitlement for a township fire chief: removal may be had only upon enumerated statutory grounds, following the designation of an investigator and the preparation of charges in conformity with R.C. 733.35 through 733.39. Plaintiff, as Fire Chief, cannot lawfully be removed from his office at will, and therefore holds a property interest, protected by the Fourteenth Amendment, in his continued service in that office and in the duties and authority attendant to it.

102. On July 20, 2026, Defendants stripped Plaintiff of all duties, responsibilities, and authority associated with the office of Fire Chief by appointing an Acting Fire Chief vested with the entirety of those duties, responsibilities, and authority, for an indefinite duration.

103. That action worked a constructive, de facto removal of Plaintiff from the substance of his office, even though Defendants have never labeled it a removal and have never afforded Plaintiff the process that an actual removal would require. Having never designated an investigator, prepared charges, or convened a hearing as R.C. 505.38 requires, see Section H, supra, Defendants cannot achieve the practical equivalent of Plaintiff's removal from office while evading the process the

23
**SMITH, WARNECKE, MEREDITH & CLARK**

Constitution and Ohio law would require to remove him outright. A public body may not accomplish through an unlabeled reassignment of duties what it is forbidden to accomplish without cause and without a hearing.

104. This property interest, and its deprivation, is reinforced by the material change worked upon the tangible incidents of Plaintiff's position, independent of any reduction in pay. See *Peterson v. Johnson*, 87 F.4th 833 (6th Cir. 2023) (rejecting a property-interest claim premised on loss of an honorific title where the plaintiff alleged neither lost pay nor tangible benefits, and reserving the question whether allegations of lost pay or tangible benefits would be sufficient to establish such an interest).

105. Plaintiff's May 11, 2026 leave letter itself confirms the material change worked upon the tangible incidents of Plaintiff's position: it directed Plaintiff to "immediately return all Shawnee Township property or equipment, including but not limited to badges, keys, identification card, passwords, cellphone, documents, vehicle, etc." Plaintiff was thereby stripped not only of the authority of his office, but of the tangible property and benefits attendant to it, including his Township-issued vehicle.

106. The material change worked upon Plaintiff's position is further evidenced by the letter's confinement of Plaintiff to his residence during his normal working hours, purportedly "in case contact with [him] is necessary." That stated justification has never once been borne out: Defendants have never contacted Plaintiff for any Township purpose during the entirety of his confinement, undermining any suggestion that the restriction served a legitimate operational need rather than serving simply to punish and isolate him.

107. Defendants took this action without any notice to Plaintiff, without any opportunity for Plaintiff to be heard, and without any hearing of any kind, either before or after the deprivation.

24

**SMITH, WARNECKE, MEREDITH & CLARK**

108. Defendants' action worked a substantial and ongoing deprivation of Plaintiff's protected property interest, separate from and in addition to the continuation of his salary, and Defendants have never afforded Plaintiff constitutionally adequate process, either before or after that deprivation. See *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

109. Defendants' conduct, undertaken under color of state law, deprived Plaintiff of property without due process of law, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

110. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, including loss of professional standing and authority, loss of the tangible property and benefits attendant to his office, damage to his career, and emotional distress.

111. Defendants' ongoing deprivation of Plaintiff's property interest is further unconstitutional because it has occurred, and continues, without Defendants ever having lawfully initiated a removal proceeding against Plaintiff in the manner required by R.C. 505.38, underscoring that no process of any kind, state or federal, has ever been afforded to Plaintiff.

112. The individual Defendants' conduct alleged in Counts I through III was undertaken with reckless or callous indifference to Plaintiff's federally protected rights, warranting an award of punitive damages against them in their individual capacities. That indifference is evidenced, among other things, by the statement of counsel for the Board of Trustees, described above, that Defendants might simply terminate Plaintiff without a hearing and allow him to file suit, an acknowledgment that Defendants were prepared to act unlawfully and to treat litigation as an acceptable cost of doing so, rather than come into compliance with the law.

113. Defendants' own written personnel policy required a pre-disciplinary conference, written notice, and a documented safety or operational justification before Plaintiff could lawfully be placed on administrative leave and excluded from his duties. Defendants' failure to satisfy any of their own

25
**SMITH, WARNECKE, MEREDITH & CLARK**

governing procedures underscores that Plaintiff's ongoing exclusion from office rests on no process whatsoever, constitutional, statutory, or self-imposed.

**COUNT IV**
**Violation of R.C. 505.38**
**(Declaratory and Injunctive Relief)**
**(Against Defendant Shawnee Township)**

114. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully rewritten herein.

115. This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a), as it is so related to Plaintiff's federal claims that it forms part of the same case or controversy.

116. R.C. 505.38 requires that, to initiate removal proceedings against a township fire chief, the board of township trustees must designate the fire chief or a private citizen to investigate the conduct at issue and prepare the necessary charges, in conformity with R.C. 733.35 through 733.39.

117. Defendant Shawnee Township, acting through its Board of Trustees, has never made any such designation with respect to the "other potential criminal allegations and policy violations" publicly attributed to Plaintiff, and the identity of any investigator purportedly assigned to that matter has never been publicly disclosed, as reported by the Lima News.

118. R.C. 733.35, which R.C. 505.38 incorporates by reference, further requires that, once charges are prepared, they "shall immediately" be filed with the board of township trustees, and that a copy "shall" be served upon the accused "at the same time, or as soon thereafter as possible." No charges concerning Plaintiff have ever been filed with the Board or served upon him, notwithstanding that written charges concerning Plaintiff existed in at least draft form, and were under active revision, as early as June 18, 2026.

119. R.C. 733.37, also incorporated by reference into R.C. 505.38, provides that an accused individual suspended "pending any proceedings" under R.C. 733.35 and 733.36 "shall not be [] suspended for a longer period than fifteen days, unless the hearing of such charges is extended upon the

26
**SMITH, WARNECKE, MEREDITH & CLARK**

application of the accused, in which event the suspension shall not exceed thirty days." Plaintiff has never applied for any extension of any hearing. As of the filing of this Complaint, Plaintiff has been suspended for more than eleven weeks, many multiples of the fifteen- and thirty-day limits R.C. 733.37 imposes.

120. Defendant Shawnee Township's failure to comply with R.C. 505.38 renders any removal proceeding against Plaintiff, whether pending or contemplated, procedurally defective and without lawful effect, and means Defendant Shawnee Township currently lacks lawful authority to continue to exclude Plaintiff from the duties of his office on the basis of any uninitiated or improperly initiated removal proceeding. Independently, Defendant Shawnee Township's continuation of Plaintiff's suspension well beyond the thirty-day maximum permitted by R.C. 733.37 renders that suspension unlawful under Ohio law regardless of the status of any charges.

121. Plaintiff is entitled to a declaration that Defendant Shawnee Township has failed to comply with R.C. 505.38, R.C. 733.35, and R.C. 733.37, and to injunctive relief requiring Defendant Shawnee Township either to comply with R.C. 505.38's designation requirement and promptly file and serve any charges before taking any further action against Plaintiff premised on the allegations described herein, or to restore Plaintiff to the full duties of his office absent such compliance.

## MUNICIPAL LIABILITY OF DEFENDANT SHAWNEE TOWNSHIP AS TO COUNTS I–III

122. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully rewritten herein.

123. The Shawnee Township Board of Trustees constitutes the final policymaking authority of Defendant Shawnee Township with respect to decisions concerning the employment, suspension, and discipline of the Township's Fire Chief.

124. The unconstitutional acts alleged in this Complaint, namely Plaintiff's suspension without notice or hearing, the imposition of the speech restrictions described herein, and the denial of Plaintiff's

27
**SMITH, WARNECKE, MEREDITH & CLARK**

request for a name-clearing hearing, were each undertaken by direct vote or action of the Board of Trustees itself, acting in its capacity as the Township's final policymaker, and therefore constitute the official policy of Defendant Shawnee Township within the meaning of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

125. In the alternative, the conduct described herein reflects a persistent pattern and practice by Defendant Shawnee Township, evidenced by its substantially similar conduct toward Plaintiff during his 2025 suspension, including Defendants' failure, on that occasion as well, to comply with R.C. 505.38's requirement that the Board designate an investigator at a public meeting before initiating removal proceedings, sufficient to establish an unconstitutional custom for purposes of municipal liability under 42 U.S.C. § 1983.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Austin Miller respectfully requests that this Court:

A. Declare that the speech restrictions contained in the May 11, 2026 leave letter constitute an unconstitutional prior restraint on Plaintiff's speech in violation of the First Amendment;

B. Declare that Defendants' continued refusal to afford Plaintiff a name-clearing hearing violates the Due Process Clause of the Fourteenth Amendment;

C. Declare that Defendants' deprivation of Plaintiff's duties and authority as Fire Chief without notice or hearing violates the Due Process Clause of the Fourteenth Amendment;

D. Declare that Defendant Shawnee Township has failed to comply with R.C. 505.38;

E. Preliminarily and permanently enjoin Defendants from enforcing the speech restrictions contained in the May 11, 2026 leave letter;

F. Preliminarily and permanently enjoin Defendants to provide Plaintiff a name-clearing hearing within a time certain to be set by the Court;

28

**SMITH, WARNECKE, MEREDITH & CLARK**

G.    Order Defendants to restore Plaintiff to the full duties, responsibilities, and authority of the office of Fire Chief, absent a constitutionally adequate hearing justifying his continued exclusion from those duties, and absent compliance with R.C. 505.38;

H.    Award Plaintiff compensatory damages in an amount to be determined at trial;

I.    Award Plaintiff punitive damages against the individual Defendants in their individual capacities, in an amount to be determined at trial;

J.    Award Plaintiff his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

K.    Award Plaintiff pre- and post-judgment interest as allowed by law; and

L.    Grant such other and further relief as this Court deems just and proper.

## VI.    JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

Respectfully submitted,

Dalton J. Smith (0099159)
Smith, Warnecke, Meredith & Clark Law, LLC
3650 Allentown Road
Lima, Ohio 45807
419-224-5147
dsmith@swmclaw.com
Counsel for Plaintiff

29

**SMITH, WARNECKE, MEREDITH & CLARK**

**LIST OF EXHIBITS**

Exhibit A     Letter from Dalton J. Smith to Shawnee Township Board of Trustees (May 26, 2026)

Exhibit B     Letter re: Administrative Leave with Pay (May 11, 2026)

Exhibit C     Shawnee Township Personnel Policy and Procedure Manual, Section 8

Exhibit D     Letter from BCI Special Agent Supervisor Scott Stranahan to Chief Robert Kohli (October 24, 2025)

Exhibit E     Clemans Nelson & Associates, Inc. Invoice No. 38093 to Shawnee Township (June 2026 Billing Period)

**SMITH, WARNECKE, MEREDITH & CLARK**